# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

GAIL F. TROXLER,              )
                             )
    Plaintiff,          )    No. 3:11-cv-00890
                             )    Chief Judge Haynes
v.                           )
                             )
MAPCO EXPRESS, INC.,         )
                             )
    Defendant.          )

## M E M O R A N D U M

Plaintiff, Gail F. Troxler, filed this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203, against Defendant MAPCO Express, Inc., her former employer. Plaintiff's claims are that MAPCO retaliated against her for requesting an accommodation and for filing an EEOC complaint.[1]

Before the Court are Plaintiff's motion for partial summary judgment (Docket Entry No. 18) and Defendant's motion for summary judgment (Docket Entry No. 30). Plaintiff asserts three claims of retaliation arising from her disability discrimination: (1) that she was terminated for requesting a reasonable accommodation; (2) that she was terminated for filing her EEOC charge; and (3) that she was ineligible for rehire as a consequence of her EEOC charge. In response, Defendant argues that Plaintiff failed to exhaust her administrative remedies that MAPCO retaliated against her by classifying her ineligible for rehire after her termination. In reply, Plaintiff contends that she did not learn of her ineligibility until after receipt of Defendant's discovery responses in this action.

---

[1]Plaintiff voluntarily dismissed her state law claims of discrimination and retaliation. (Docket Entry No. 38 at 1).

In its cross motion, Defendant argues that, in essence: (1) MAPCO provided Plaintiff with reasonable accommodations; (2) Plaintiff has not established the *prima facie* elements of a claim of retaliation under the ADA; and (3) even if Plaintiff could establish a *prima facie* case of retaliation, MAPCO established a legitimate, non-discriminatory reason for her termination, and Plaintiff cannot show that this reason was pretextual.

For the reasons set forth below, the Court concludes that the proof shows that given the Defendant's significant history of accommodation, the Plaintiff was not terminated for requesting a reasonable accommodation and the Defendant had a legitimate basis to terminate the Plaintiff and deem her ineligible for rehire. Plaintiff has not submitted proof to the contrary. Therefore, the Court concludes that Plaintiff's motion for partial summary judgment should be denied and Defendant's motion for summary judgment should be granted.

## I. REVIEW OF THE RECORD[2]

Plaintiff, Gail F. Troxler, has suffered from asthma her entire life. (Docket Entry No. 25, Defendant's Response to Plaintiff's Statement of Undisputed Facts at ¶ 6). Plaintiff's asthma is triggered by strong smells and scents, such as perfume. Id. Plaintiff takes medication to control her asthma. Id.

---

[2]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 f.2d 43, 46 (6th Cir. 1986) app. 840 f.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 276 (1986). The Court concludes that, under the applicable law and Plaintiff's response to Defendant's Statement of Undisputed Facts, there are some factual disputes, but those disputes are not material. Thus, this section constitutes findings of fact under Fed.R.Civ.P. 56(d).

2

Plaintiff started working for Defendant MAPCO Express Inc. ("MAPCO") as an accounts payable clerk in February 2003. Id. at ¶ 1. During part of Plaintiff's employment with MAPCO and at the time of Plaintiff's termination, Plaintiff's immediate manager was Brian Wright. Id. at ¶ 3. In approximately 2005, Plaintiff provided MAPCO a doctor's note concerning her asthma condition. (Docket Entry No. 35, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶ 6). Kathy Roadarmel, MAPCO's vice president of human resources, communicated to Plaintiff that she would handle any issues involving Plaintiff's problem with scents at work on an individual basis with any employee whom Plaintiff identified as wearing such offensive scents. (Docket Entry No. 27, Plaintiff's Response to Defendant's Additional Statement of Undisputed Facts at ¶ 30; Docket Entry No. 24-1, Troxler Deposition at 72).

In October 2008, Plaintiff provided her supervisor and Roadarmel another doctor's note stating that her asthma is triggered by contact with certain fumes/odors and asked MAPCO to limit Plaintiff's exposure to fumes and odors such as perfumes, Lysol, air fresheners, and other products. (Docket Entry No. 27 at ¶ 5; Docket Entry No. 35 at ¶ 5). Plaintiff complained several times over the course of her employment about smells in the workplace and their effects on her asthma, but admits that she did not suffer any adverse employment action following any of these complaints. (Docket Entry No. 35 at ¶ 7; Docket Entry No. 27 at ¶ 6).

Since Wright became Plaintiff's manager, he was aware of Plaintiff's asthma and her aversion to odors. (Docket Entry No. 25 at ¶ 7). On one occasion, Plaintiff asked Wright to stop using a scented candle, as she had a sensitivity to smells and the candle's scent triggered her asthma. Id.; Docket Entry No. 24-5, Wright Deposition at 29-29. On another occasion, Plaintiff complained to Wright that Alan Johnson was wearing a cologne that bothered her. (Docket Entry No. 27,

3

Plaintiff's Response to Defendant's Additional Statement of Undisputed Facts at ¶ 34). In response, Wright asked Johnson to stop wearing the cologne. Id. at ¶ 35.

In March 2010, Plaintiff emailed Wright complaining she smelled "cheap perfume" in her work area. (Docket Entry No. 35 at ¶ 11). Wright emailed the accounts payable department employees requesting that they be careful about wearing scented products and to help maintain a fragrance-free environment, a response that Plaintiff found acceptable, but the email did not alleviate the situation. (Docket Entry No. 24-1, Troxler Deposition at 90-91). Id. at ¶ 12. Whenever Plaintiff requested to go home because her asthma was bothering her, MAPCO always acquiesced. Id. at ¶ 13. Kevin Pollock, Wright's manager, sent an email to employees in other departments within proximity of the accounts payable department to alert them of the issue of scents in the workplace and to ask them to avoid wearing any fragrances at work. Id. at ¶ 14.

Sometime after June 25, 2010, Plaintiff and another employee, Felicia Frasure, complained about strong odors in the workplace. (Docket Entry No. 25 at ¶ 8). Plaintiff failed to identify Surkanya Johnson as wearing offensive perfume until at least June 25, 2010 despite the fact that Plaintiff sat next to her. (Docket Entry No. 27 at ¶ 12). Although Defendant asserts that Plaintiff and Frasure often stood behind Johnson's cubicle whispering about Johnson's music and "smell" at a level that Johnson could overhear, Plaintiff disputes that she and Frasure whispered about Johnson or otherwise taunted her. (Docket Entry No. 37, Troxler Affidavit at ¶ 3).

On June 28, 2010, Frasure and Plaintiff told Joane Walker, the vice president and chief accounting officer for Delek U.S. Holdings, MAPCO's corporate parent, that they were having problems with asthma because of strong fragrances in the office. (Docket Entry No. 25 at ¶ 19). Plaintiff asked to be moved farther away from Johnson's desk to escape the strong perfume. (Docket

4

Entry No. 27 at ¶ 40; Docket Entry No. 30-1, Troxler Deposition at 94-95). Although Walker was skeptical that the move would resolve Plaintiff's concerns because of MAPCO's open-air environment, Walker implemented the move within a few days of Plaintiff's request. Id. at ¶ 40.

On June 30, 2010, Plaintiff sent an email to Wright and Kent Thomas, MAPCO's general counsel, advising them of the strong odors and requesting an accommodation. (Docket Entry No. 25 at ¶ 9; Docket Entry No. 24-1, Troxler Email at 30). Wright treated this email as a request for an accommodation. Id. at ¶ 9. Plaintiff's email was not her first complaint about the effects of workplace scents on her asthma. (Docket Entry No. 27 at ¶ 4).

On June 30, 2010, Plaintiff filed an EEOC charge of disability discrimination against MAPCO for refusing to accommodate her asthma. (Docket Entry No. 30-1, Troxler Deposition at 45). The EEOC charge alleged discrimination on the basis of disability between January 1, 2010 and June 30, 2010. Id.

On July 7, 2010, Walker told Plaintiff that she was terminating her and four others in the accounts payable department, except for Wright and one other individual, because the department was not cooperating. (Docket Entry No. 25 at ¶¶ 12-13). Walker testified:

> Q: Okay. What conflicts did you become aware of? And then I'll ask you who made you aware. So let's talk about what conflicts?
>
> A: That the members of the accounts payable team were not working cohesively. Specifically, Gail and Felicia were not working cohesively with Surkanya. But additionally, that everyone in the group was not working cohesively.
>
> . . .
>
> Q. Was there any explanation as to why these conflicts existed?

5

A. The specific things were that they did not get along. On the morning of the 28th, when I had conversations, both with Surkanya and with Gail and Felicia, Surkanya shared that Gail and Felicia would start the day standing behind her cube whispering, complained about her music until she bought earphones. Overall, gave her the strong impression they did not like her and wanted her to leave. And then Brian shared that Gail gave him a number of comments about not liking Surkanya and not wanting her smell, which I think is kind of a derogatory way to talk about it. But those, I mean, conflict is what I was hearing out of all this, conflict.

Q: Was there any reference to perfume in terms of smell?

A: There was by Brian.

Q: All right.

A: There was by Surkanya.

Q: What did Brian say, and then I'll aks you about Surkanya.

A: Well, both of them said complaining about the smell of her perfume.

Q: And who had complained about the smell of Surkanya's perfume?

A: It's my understanding both Gail and Felicia.

(Docket Entry No. 30-4, Walker Deposition at 47-50). Pollock agreed with Walker that the smells issue in the accounts payable department contributed to the internal conflict. (Docket Entry No. 25 at ¶ 32).

Plaintiff and the other employees were told that they could resign and receive a severance package or be terminated. (Docket Entry No. 35 at ¶ 30). Johnson and Frasure accepted the severance package, but Plaintiff did not. Id. at ¶ 31. Walker terminated Plaintiff's employment. (Docket Entry No. 25 at ¶¶ 12, 23). Pollock testified that during his meeting with Walker and Frasure, terminating Frasier, on July 7, 2010, Frasure cried and pleaded not to be fired. Id. at ¶ 31. Wright first learned about the firings on the same day, July 7, 2010. Id. at ¶ 14.

6

Two department employees in the accounts payable unit, Alan Johnson and Connie Brown, lobbied to keep their jobs and were rehired within a day or two. (Docket Entry No. 35 at ¶ 32; Docket Entry No. 30-4, Walker Deposition at 71-72). Brown had multiple medical conditions that included sensitivity to smells and, like Plaintiff, had complained about smells in the workplace. (Docket Entry No. 35 at ¶ 35). Yet, according to Wright, Brown did not raise any concerns about odor or smells until the day of moving cubicles when Brown smelled Surkanya Johnson's perfume and asked to be moved. (Docket Entry No. 30-2, Wright Deposition at 59). Connie Brown also had arthritis, and was sometimes permitted to work at home because her arthritis medication prevented her from driving. (Docket Entry No. 27 at ¶ 28).

Pollock completed Plaintiff's separation notice dated July 10, 2010, stating that Plaintiff was ineligible for rehire. (Docket Entry No. 25 at ¶ 25). Pollock was unaware of Plaintiff's EEOC charge at the time he completed Plaintiff's separation notice. (Docket Entry No. 35 at ¶ 43). The EEOC charge was stamped received by MAPCO on July 8, 2010. (Docket Entry No. 25 at ¶ 28; Docket Entry No. 30-1 at 44). Plaintiff admits that she does not know when MAPCO received the June 30, 2010 filed EEOC charge. (Docket Entry No. 27 at ¶ 21). Walker did not know that Plaintiff filed a charge with the EEOC before terminating her. Id. at ¶ 44. Walker stated that she could not remember the exact date when she learned of Plaintiff's EEOC charge, but knows it was not before July 10, 2010. (Docket Entry No. 39 at ¶ 11).

Walker initialed the separation notice, but does not know whether she initialized the document noting Plaintiff's ineligibility for rehire before or after she learned of Plaintiff's EEOC charge. (Docket Entry No. 35 at ¶ 44). The reason provided for Plaintiff's ineligibility states, "conduct demonstrated." (Docket Entry No. 18-3). Walker cannot provide any specific guidance

7

as to the criteria for when a terminated employee is eligible for rehire. (Docket Entry No. 39 at ¶ 22). Wright, Plaintiff's immediate supervisor, does not know whether Plaintiff was eligible for rehire. (Docket Entry No. 25 at ¶ 29). Wright did not know to what conduct was referred in reference to Plaintiff not being eligible for rehire. Id.

After her discharge, Plaintiff amended her EEOC charge to add a retaliation claim. (Docket Entry No. 6 at 2). Plaintiff wrote that: "[a]fter I filed my original EEOC Charge and the company learned of it, my employment was terminated on July 7, 2010." (Docket Entry No. 35 at ¶ 46). Plaintiff did not include any allegation of her ineligibility for rehire as retaliatory. Id. at ¶ 47.

As evidence of Plaintiff's poor conduct barring her rehire, Defendant cites Plaintiff as a source of conflict with the accounts payable department, causing the lack of cohesiveness and Plaintiff's termination as well as other accounts employees' terminations. According to Pollock, Plaintiff also complained about the way work was structured and the MAPCO's policies and procedures. (Docket Entry No. 27 at ¶ 14). Plaintiff also complained about: (1) the latitude given to MAPCO executives on travel and entertainment policy reimbursements; (2) MAPCO's practice of paying copies of invoices rather than original invoices; and (3) the lack of equity in work assignments. Id. Pollock counseled Plaintiff for circumventing him in the chain-of-command by directly contacting Walker and Controller Danny Norris. Id. at ¶ 15. Farzad Beladi, the assistant controller, verbally warned Plaintiff about her rude treatment of Angela Waites, a co-worker. (Docket Entry No. 35 at ¶ 20). Prior to Good Friday 2008, Walker said "Happy holidays you all," to a group of employees, to which Plaintiff responded, "If we even get a holiday," a remark that Walker deemed rude. Id. at ¶ 21.

8

## II. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee notes. Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" Matsushita Electrical Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

9

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239 n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of `demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then `must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or

the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation

omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must

be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791

F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a

summary judgment motion:

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

12

> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
>
> 6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.
>
> 7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an

element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

## A. Exhaustion

Defendant contends that Plaintiff's retaliation claim based on being classified as ineligible for rehire should be dismissed because Plaintiff did not exhaust her administrative remedies. Defendant contends that Plaintiff did not include in either EEOC charge an allegation of retaliation

14

for classifying her as ineligible for rehire after she was terminated. In response Plaintiff asserts that Plaintiff first learned of this fact during discovery.

"[A] plaintiff 'must file a charge with the EEOC before filing a complaint alleging . . . discrimination in federal court.'" Spengler v. Worthington Cylinders, 615 F.3d 481, 489 (6th Cir. 2010) (quoting Davis v. Sodexho, Cumberland Coll. Cafeteria, 157 F.3d 460, 463 (6th Cir.1998)). Moreover, "retaliation claims based on conduct that occurred *before* a charge is filed must be included in that charge." Id. (emphasis added). Yet, "[r]etaliation claims are typically excepted from the filing requirement because they usually arise *after* the EEOC charge is filed." Id. at 463 n.3 (emphasis added) (citation omitted).

This exception, however, "does not apply to retaliation claims based on conduct that occurred before the EEOC charge was filed." Abeita v. TransAmerica Mailings, Inc.,159 F.3d 246, 254 (6th Cir.1998); see Ang v. Procter & Gamble Co., 932 F.2d 540, 547 (6th Cir.1991) ( "Retaliatory conduct occurring prior to the filing of the EEOC complaint is distinguishable from conduct occurring afterwards as no unnecessary double filing is required by demanding that plaintiffs allege retaliation in the original complaint."). The Sixth Circuit explained that:

> "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court."... Because retaliation claims, by definition, arise after the filing of the EEOC charge, this rule promotes efficiency by requiring only one filing.... Retaliatory conduct occurring prior to the filing of the EEOC complaint is distinguishable from conduct occurring afterwards as no unnecessary double filing is required by demanding that plaintiffs allege retaliation in the original complaint.

Ang v. Procter & Gamble Co., 932 F.2d 540, 546–47 (6th Cir.1991) (citations omitted); Ayala v. Summit Constructors, Inc., 788 F. Supp.2d 703, 718 (M.D. Tenn. 2011) (noting that "Courts within

15

this circuit have followed Ang and Abeita's exception for retaliation claims that arise after the filing of an EEOC charge.") (collecting cases).

In Delisle v. Brimfield Tp. Police Dept., 94 Fed.Appx. 247 (6th Cir. 2004), the Sixth Circuit explained:

> the three situations in which a district court has jurisdiction to hear claims not alleged in an EEOC charge which are sufficiently related to the allegations in the complaint before the court: (1) an allowance of loose pleadings by a plaintiff who has most likely filed an EEOC charge without the benefit of counsel, where the conduct complained of would fall "within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" (2) an allegation of retaliation by an employer against an employee for filing an EEOC claim, where there is a "close connection of the retaliatory act to both the initial discriminatory conduct and the filing of the charge itself;" and (3) where a plaintiff "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."

Id. at 252 (citing Butts v. City of N.Y. Dep't of Housing Preservation & Dev., 990 F.2d 1397, 1401-03 (2d Cir.1993) (reversed on other grounds).

Here, Plaintiff's original and amended EEOC charges alleged that Plaintiff informed Defendant of her disability and that Plaintiff requested reasonable accommodation that Defendant failed to grant. These allegations placed the EEOC on notice that the retaliation based on Plaintiff's internal complaints was within the "scope of investigation."  Based on the law in this Circuit, Plaintiff was not required to file a new EEOC complaint alleging retaliation based on ineligible rehire as this claim arose after the filing of Plaintiff's prior EEOC charge.  Accordingly, the Court concludes that Defendant's exhaustion contention fails.

### B. Retaliation Under the ADA

As to retaliation, the ADA provides:

16

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). This Circuit applies the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden-shifting approach to a claim for retaliation under the ADA. Bryson v. Regis Corp., 498 F.3d 561, 577 (6th Cir. 2007). To state a claim for disability-retaliation, Plaintiff must establish a *prima facie* case of retaliation, showing that (1) she engaged in a protected activity; (2) her employer knew about her protected activity; (3) she suffered an adverse employment action; and (4) there is a causal link between her engaging in protected activity and the adverse employment action. Clark v. City of Dublin, 178 F. Appx. 522, 525 (6th Cir. 2006). "To establish a retaliation claim, the plaintiff need not prove 'disability' under the ADA. Rather, the protected act is the showing of a good-faith request for reasonable accommodations." Baker v. Windsor Republic Doors, 414 F. Appx. 764, 777 n.8 (6th Cir. 2011); see Bryson, 498 F.3d at 577 ("A plaintiff may prevail on a disability-retaliation claim 'even if the underlying claim of disability fails.'"); see also Krouse v. Am. Sterilizer Co., 126 F.3d 494, 502 (3d Cir. 1997) ("An individual who is adjudged not to be a 'qualified individual with a disability' may still pursue a retaliation claim under the ADA.").

The Sixth Circuit recently held that disability discrimination need not be the "sole" or "motivating" factor standard in establishing retaliation under the ADA. In Lewis v. Humboldt Acquisition Corp., Inc., 681 F.3d 312 (6th Cir. 2012), the Sixth Circuit stated, "[c]onsistent with the Supreme Court's decision in Gross v. FBL Financial Services, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), we see no reason to insert the one addendum ('solely') or the other ('a motivating factor') into the ADA." Lewis, 681 F.3d at 314. Instead, "the ADA bar[s] discrimination

17

'because of' an employee's age or disability, meaning that they prohibit discrimination that is a 'but-for' cause of the employer's adverse decision." Id. at 321 (quoting Gross, 557 U.S. at 176).

To establish a causal connection between the protected activity and the adverse employment action, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not" engaged in protected activity. Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). The Sixth Circuit has stated that "[t]emporal proximity alone in the absence of other direct or compelling circumstantial evidence is generally not sufficient to support a finding of causal connection." Id. at 566; see also Weatherby v. Fed. Express, 457 F.Appx. 480, 492 (6th Cir. 2012); Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 596 (6th Cir. 2007); Ozier v. RTM Enters. of Ga., Inc., 229 F. Appx. 371, 377 (6th Cir. 2007).

In the Sixth Circuit, temporal proximity may be sufficient where an employee's protected activity is immediately followed by an adverse employment action. Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008); see Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 563 (6th Cir. 2004) (finding that temporal proximity of three months was "significant enough to constitute sufficient evidence of a causal connection for the purpose of satisfying [the plaintiff's] burden of demonstrating a prima facie case"); DiCarlo v. Potter, 358 F.3d 408, 421 (6th Cir. 2004) ("[T]his Circuit has embraced the premise that in certain distinct cases where temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise.").

"'[A]t the *prima facie* stage the burden is minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and

18

requiring the court to draw reasonable inferences from that evidence, providing it is credible.'" Nguyen, 229 F.3d at 566 (quoting EEOC v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir. 1997)). "'[A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the *prima facie* case.'" Grace v. USCAR, 521 F.3d 655, 677 (6th Cir. 2008) (citing Wexler v. White's Fine Furniture, 317 F.3d 564, 574 (6th Cir. 2003)).

To prove a causal connection, the Plaintiff should also identify those individuals who are similarly situated yet treated differently. "To be deemed 'similarly situated,' the comparable employee 'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Allen v. Ohio Dept. of Job & Family Servs., 697 F.Supp.2d 854, 887 (S.D. Ohio 2010) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1991). "In determining whether an allegedly comparable employee is similarly situated, the ultimate question is whether 'all of the relevant aspects of [his/her] employment situation were nearly identical to those of the [comparator's] employment situation.'" Allen, 697 F. Supp.2d at 887 (emphasis omitted) (quoting Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344 (6th Cir. 1998). "The absence of discipline, alone, is insufficient to show a *prima facie* case." Allen, 697 F. Supp.2d at 887 (finding that "because [the Plaintiff] [could not] demonstrate that anyone committed the insubordination he was charged with, he cannot establish a *prima facie* case of discrimination with respect to this disparate treatment claim").

If Plaintiff satisfies her *prima facie* showing retaliation under the ADA, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment decision. Barrett v. Lucent Technologies, Inc., 36 F. Appx. 835, 841 (6th Cir. 2002). "If the

19

defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times." Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 453 (6th Cir. 2004) (citation omitted).

Here, Plaintiff asserts three claims of retaliation: (1) that she was terminated for requesting a reasonable accommodation; (2) that she was terminated for filing her EEOC charge; and (3) that she was ineligible for rehire as a consequence of filing her EEOC charge. The record shows that beginning in 2005, Plaintiff provided MAPCO with notice of her asthma and MAPCO management consistently responded, ending with the response to Plaintiff's June 28, 2010 email to Walker requesting an accommodation. Plaintiff filed another request on June 30, 2010, the same day as her first EEOC charge. Pollock and Walker agreed that the smells issue in the accounts payable department contributed to the department conflict. In addition, Plaintiff filed an EEOC charge of disability discrimination seven days prior to her termination and Plaintiff was made ineligible for rehire on July 10, 2010, even though the Defendant agreed to rehire two other employees who had not made similar complaints as to odors or perfumes, although Brown did on the day of moving cubicles.

Thus, the Court concludes that Plaintiff has not satisfied her *prima facie* showing of retaliation for her reasonable accommodation request. Plaintiff has made these requests since 2005 and MAPCO's has positively responded to the requests since that time. The Court concludes that Plaintiff's reasonable accommodation claim fails as to her retaliation claims. Plaintiff must establish (1) that she engaged in protected activities by making "a good-faith request for reasonable accommodations" and by filing an EEOC charge, Baker, 414 F. Appx. at *11 n.8; (2) that Wright

treated her request as a request for accommodation and that MAPCO received a copy of the EEOC charge before Plaintiff was made ineligible for rehire; (3) that she suffered an adverse employment action by being terminated and then made ineligible for rehire; and (4) that the temporal proximity and the differential treatment afforded Plaintiff raise an inference of retaliation by establishing a causal link between her engaging in protected activities and the adverse employment actions. Dixon v. Gonzales, 481 F.3d 324, 333 (6th Cir.2007) ("The burden of proof at the prima facie stage is minimal...."); Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 315 (6th Cir. 2001) ( "A plaintiff's burden in establishing a prima facie case is not intended to be an onerous one.'"); Bryson, 498 F.3d at 571 ("We have previously held that proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection.").

First, the Court concludes that Plaintiff fails to show that she was terminated in retaliation for filing her EEOC charge because the undisputed facts show that Walker was unaware of Plaintiff's EEOC charge prior to Plaintiff's termination on July 7, 2010. MAPCO did not receive the EEOC charge until July 8, 2010.

As to its legitimate, non-retaliatory reasons for terminating Plaintiff, Defendant described the decisive environment of its accounts payable department: "[T]he members of the accounts payable team were not working cohesively. Specifically, Gail and Felicia were not working cohesively with Surkanya. But additionally, that everyone in the group was not working cohesively." (Docket Entry No. 30-4, Walker; Deposition at 47-48). Although the smells issue was a factor in the lack of cohesion, Defendant also cites instances of Plaintiff's reprimands for rudeness and circumventing the chain-of-command. Frasure and Johnson, the source of the odor, were not rehired. There is not any proof that Frasure or Johnson were counseled about rudeness and circumventing the command

21

chain. Frasure requested her job back, but was denied. Further, Walker does not know whether she initialized Plaintiff's separation notice concerning Plaintiff's non-eligibility for rehire before or after she knew about Plaintiff's EEOC charge. Walker cannot provide any specific guidance as to the criteria for when a terminated employee is eligible for rehire, and Wright does not know whether Plaintiff was eligible for rehire or what the conduct referred to in the separation notice comprised. The record shows that Brown, who also had multiple medical conditions including a sensitivity to smells, was rehired to the accounts payable department. Yet, Brown is not shown to have had any reprimands, charges of rudeness and circumventing of management. Brown's rehire underscores that asthma was not a consideration in MAPCO's ineligible for rehire decisions.

Thus, Defendant had legitimate reasons for Plaintiff's termination and deeming her ineligible for rehire. The Court concludes that a reasonable juror could find that Defendant's stated reasons for Plaintiff's termination were not pretext for retaliation. Thus, Defendant's motion on Plaintiff's two aforementioned retaliation claims should be granted.

Accordingly, the Court concludes that Plaintiff's motion for partial summary judgment (Docket Entry No. 18) should be denied, and Defendant's motion for summary judgment (Docket Entry No. 30) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 27 of September, 2012.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court

22